United States Court of Appeals for the 9th Circuit is now in session. I present the petitioner in this case, Shahid Mutee. I'm going to watch the clock and try and save a couple minutes for rebuttal. Okay. This Court should reverse the denial of Mr. Mutee's Section 2255 motion and remand with instructions to grant it. The district court incorrectly classified his prior conviction for breaking and entering as a violent felony, although it correctly classified his conviction for assault with a deadly weapon as not being a violent felony. What was the breaking and entering conviction or burglary conviction? So the name of the statute in North Carolina, Your Honor, is breaking and entering, although North Carolina helpfully also has a burglary statute. But this one is called breaking and entering under State law, but because we all think of it as burglary because we're comparing it against generic burglary, I understand where the confusion comes from. Okay. And before I dive in, I just want to say, if the panel doesn't have any questions about the assault conviction, I just want to focus on the breaking and entering issue because that's why we're here again six months later. Right. North Carolina's breaking and entering statute is overbroad with respect to the generic definition of burglary because State case law holds that a building is any structure that has four walls and a roof. And that is overbroad, as the Supreme Court has explained to us recently in the Stitt decision. Because the panel held this case over for to wait for Stitt, I feel like the place to start analytically is to just explain my view of where the Ninth Circuit case law is with generic burglary after Stitt because the last time that the Ninth Circuit visited this issue in the Grissel case, Stitt has come along and done some alteration to the law in the area. Well, do you think that Stitt helps you or hurts you? Well, Your Honor, Stitt, my ultimate position, as I explained in my supplemental brief, is that Stitt does not change my contention that North Carolina's burglary statute is, I'm sorry, breaking and entering statute, is overbroad. But here's why. Well, could you answer my question first? That's where I was going. Okay. So. Well, it helps you or hurts you? Which one? Stitt doesn't hurt me, I guess, is the answer to your question. Stitt doesn't hurt me because. Does it help you? Well, it makes it harder for me to win, but I think I can still win for this reason. Stitt makes clear that a statute, a state burglary statute, that punishes conduct involving literally any kind of structure is still overbroad with respect to the generic definition of burglary under the Armed Career Criminal Act. And North Carolina's case law confirms that this breaking and entering statute is one of those statutes that applies to literally any building, or structure, I should say. And because of that feature of North Carolina law, Stitt doesn't hurt me. It still explains why I win. It's just that perhaps what this panel will end up having to do is publish an opinion that explains how this circuit's case law about what generic burglary means was affected by Stitt, and then if the panel is going to rule in my favor, then explain why North Carolina's breaking and entering statute is still overbroad because it punishes conduct involving literally any structure that has four walls and a roof. But doesn't Stitt speak in terms of building or structure? The generic definition of burglary involves entry into a building or structure. Stitt doesn't change that. Right. But that was true under Taylor. The narrow question involved in Stitt was whether a vehicle that is adapted or used for overnight accommodations of persons is whether a State statute that punishes conduct involving entry into that kind of place falls inside or outside the generic definition of burglary. Right. But I thought your objection to the North Carolina statute was that it encompassed any type of structure. That is. But doesn't Stitt countenance that definition? If by countenance you mean ---- So Stitt still says that a statute, a State statute that punishes conduct involving any kind of structure, like Missouri's, which was involved in Taylor, like Iowa's, which was involved in Mathis, those two statutes, the Stitt opinion says, still fall outside the generic definition of burglary. North Carolina's ---- Because what? Because, so that's where the Stitt opinion is maybe not so clear, Your Honor. My reading of the Stitt opinion is statutes like Missouri's and Iowa's fall outside the generic definition because the State statute does not limit the type of structure into which the burglary breaking and entering the unlawful entry is involved into a place that is adapted or used for overnight accommodation of persons. The Missouri and Iowa statutes punish conduct involving entry into literally any kind of building. The Gamble opinion on which the magistrate judge relied and that the government cites in its answering brief shows that this North Carolina statute here also applies to any structure that has four walls and a roof. Yeah, I guess I think I read Stitt differently from you. Okay. Because I read the intended for human habitation or whatever you want to call that requirement as applying only to movable structures like a vehicle. As to the regular old things with four walls and a roof, there's no human habitation requirement that Stitt imposed, and so that's why I think you're just misreading Stitt if you think that somehow it has rendered the North Carolina statute over broad. You know, and that's maybe what this Court is going to publish an opinion to settle because that was the basis of Grissel. Right. Right. And if now Stitt has, you know, abrogated Grissel, if you look on Westlaw, Grissel has a red flag, and as a result, Stitt means this Court has to publish an opinion that changes what generic burglary is going forward. Well, but didn't generic burglary always include buildings that were not necessarily included for habitation like warehouses? Are you saying that those were not encompassed under generic burglary historically? I think so, Your Honor, that they were always. You think so? I think they were outside the definition of generic burglary because they were, you know, and I understand Your Honor disagrees, but that's the position that I'm taking. That's the contention that I need to make in order to win. Oh, okay. So if I may reserve the balance of my time. Okay. All right. Thank you. We understand your argument, I think. Yes. All right. Good afternoon, Your Honors, and may it please the Court. My name is Alexander Samuels. I'm an assistant United States attorney in Phoenix, Arizona, and I'm here on behalf of the United States. I want to start by turning to Judge Rawlinson's line of questioning and I think answer it by saying that Stitt is very clear about what its holding is and I think it very much hurts the Petitioner's case here. In his opening brief to this Court and in his 2255 motion below, the argument focused exclusively on the fact that the North Carolina statute includes movable structures that are adapted for dwellings, like mobile homes. That was the argument both in the district court and in the opening brief here, and that argument relied almost entirely on this Court's en banc decision in Griselle. Since that time, Stitt not only reached a holding that is, frankly, good for the government here, it expressly abrogated Griselle. Griselle is no longer good law, and this Court doesn't have to guess at that. The Supreme Court instead called out Griselle by name and said that it was abrogating it. Stitt granted expressly to resolve the circuit split that Griselle, in part, was a part of. So since the time that the initial briefing was completed here and since the time that the petition was filed in the district court, the linchpin of Mr. Muti's argument here simply is no longer good law. The supplemental brief seems to acknowledge that to some extent and seems to pivot to a slightly different argument, which is that the North Carolina statute is overbroad because it covers buildings that are not intended for overnight occupancy by people. That was the language used in the supplemental brief. But that has never been the test, and you can look at the fundamental Supreme Court case on this, which is Taylor, and learn this from Taylor. Taylor actually cites as an example of what would be covered under the generic definition commercial buildings, business offices, things of that nature. So even Taylor makes clear that it doesn't have to be a dwelling. It doesn't have to be any sort of structure that's designed for overnight occupancy by people. Commercial buildings are sufficient. As I think Your Honor noted, I think something like a warehouse would be sufficient to fall within the generic definition, and therefore, North Carolina's statute is not overbroad here. And I would note as to the name of the statute, Taylor also makes clear that the name of the statute is not controlling in any way. It's the elements. The elements here are consistent with the generic definition. I would also note that even turning to Griselle, even assuming there was some piece of Griselle that had somehow survived, in detailing its conclusions, the Court there cited to the Taylor case and tried to explain what it thought the definition was in Taylor and what it thought it meant. And that sentence in which it dictated what it thought Taylor meant was cited pretty extensively in the briefing here. At the end of that sentence, in a footnote, the Court cited a dictionary definition for what building means. And in that definition, it says that it includes a dwelling, a storehouse, a factory, a shelter for animals, or another useful structure, distinguished from structures not designed for occupancy such as fences or monuments. I think that definition, even from Griselle, helps make clear what is and is not covered and that the petitioner's argument here simply doesn't accurately apply the case law. I would also note the North Carolina courts, consistent with that definition, have actually cited that exact same dictionary definition in the Gamble case, which is cited in our answering brief, further showing that they are applying a definition that is very much consistent with Taylor and the Supreme Court's case law since then. The Taylor decision makes clear, and Stitt also confirms this, that restricting the generic definition to the common law definition, such as just including dwellings, is simply not consistent with modern law enforcement concerns. That comes directly from Stitt just last year trying to explain what the Court had done in Taylor. And so we think it is clear from Taylor, from Stitt, that the North Carolina statute is not overbroad. I would also point this Court to out-of-circuit cases that have reached similar conclusions. The First and Sixth Circuit have reached that conclusion, albeit confronting different arguments perhaps than have been made here. The Fourth Circuit, most importantly, has reached that conclusion in a published opinion and has repeatedly confronted a variety of arguments about why this statute may be overbroad, has repeatedly rejected them. And I filed a 28-J letter last week to point the Court to a couple of recent cases in which they not only did that, but did that in confronting arguments that very much mirrored the ones that were made in the briefing here. Don't we have a North Carolina case that involves someone breaking or entering into a trailer that was just used to store stuff? We do, and that's the Bost case. I would point out, first of all, that was not really the argument that was made here in the opening brief. And so arguably that argument may have been waived. But setting that aside for a second, there's nothing in Taylor or Stitt or anywhere else in the Supreme Court's case law that would indicate that that type of structure is not a structure for purposes of Taylor's generic definition. Taylor never said that the building has to be capable of occupancy by humans overnight. And in fact, when this Court tried to explain what Taylor's definition meant in Griselle, they used that dictionary definition that talked about a variety of types of structures, including ones where animals would be the ones occupying it. Right. But I'm saying after Stitt, we know that something that's movable does need to be adapted or designed for whatever the – I see your point there, Your Honor. Right. I think that is true. And I think North Carolina's statute is particularly well-suited to make the analysis pretty clear here in that 1454, the statute we're talking about here, deals with permanent structures or structures that have been characterized as permanent given how they're being used. So in Bost, for example, the trailer was talked about in the opinion as being up on blocks. It was not something that simply was being hauled to and from a particular place to another place on a regular basis. It was stationary for some significant period of time. It was at a construction site. Presumably it would have been there throughout the construction project and then perhaps at that point taken down off the blocks and moved to another construction site. In 1456, which is another North Carolina statute, they deal with the types of structures that might be more concerning if they were included in the statute here, trailers that are being used on a regular basis as movable structures simply for transport of property. If 1456, if all those items were included in this statute, we may have a problem. But that's not the case here. That is what the Missouri and Iowa statutes look like that have been discussed at length by the Supreme Court. The problem with those statutes is that they include any vehicle, any trailer, and the word any was cited by the Supreme Court as the concern there. The statutes on their faces and as applied by those two state Supreme Courts make clear that they apply to a much broader array of vehicles, of boats, of aircraft, not just ones that have either been permanent or been essentially rendered stationary based on the way in which they were used. And the North Carolina courts here have even said the difference between 1454 structures and 1456 structures is characterized by characteristics of permanence. That's the language they've used, and that, I think, makes this Court's analysis, given Taylor, given Stitt, pretty easy in this case. With that, Your Honors, if you have no other questions about the breaking and entering statute, I would just note briefly on the assault statute. I think the Court clearly doesn't need to get to that point here. If for some reason the Court was inclined to get to that point, I think the Petitioner is right that the Arona case is very much related on that front, has been submitted to another panel already. And I want to make clear that our view is the same, which is that that case is very related and would likely resolve the issue here. But, again, I think the breaking and entering statute is pretty clear here, that it fits within the generic definition, and that that's enough for this Court to resolve this case. Thank you. Thank you, counsel. Your bottle. I just want to address one small point that my friend at the other table made and then give Judge Wallace an opportunity to ask me any questions, because I don't think I acknowledged him during my opening presentation, and I apologize. The one point that I want to make is concerning the waiver argument that my friend floated. My argument in my reply brief about the Bost case comes from the government's answering brief. Waiver doesn't apply if the appellee has had an opportunity to fully flesh out a legal argument, and I just want to say that there's no reason for this Court to address any of these issues on waiver grounds. I think it's entirely appropriate for the Court to reach the merits. And with that, I will. Judge Wallace, did you have any questions? Tell me what you make of the Supreme Court's determination. It seems to be, in the interpretation, something of protecting people. That seemed to be pretty key, at least to what the author thought the issue was here. What do you make of that? Is that the distinction we make between a vehicle that hauls things around for a company and, say, a tent trailer that some people may be inside to sleep? I think that's right, Your Honor, and I think that that principle justifies my argument that, you know, the scope of the places involving the illegal entry are limited to places that are designed for overnight occupation of people. And that principle would sensibly support the limitation that I'm proposing. And if there are no further questions from the panel, I'll ask the Court to reverse. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court, and we are adjourned. All rise.
judges: Wallace, Rawlinson, Watford